ARCADIA PLUMBING TRUST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD AND CHARLOTTE M. BRODERICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Arcadia Plumbing Trust v. Commissioner
Docket Nos. 5086-93, 5119-93
United States Tax Court
T.C. Memo 1994-455; 1994 Tax Ct. Memo LEXIS 460; 68 T.C.M. (CCH) 699; September 13, 1994, Filed *460 Decisions will be entered under Rule 155. For petitioner in docket No. 5086-93: Jimmy C. Chisum (trustee). Richard Broderick and Charlotte M. Broderick, pro se in docket No. 5119-93. For respondent: Susan E. Seabrook. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: These consolidated cases were heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income taxes, additions to tax, and penalties as follows: Docket No. 5086-93
Additions to Tax and Penalty
Sec.
Sec.
Sec.
Petitioner
Year
Deficiency
6651(a)(1)
6653(a)(1)
6662(a) Arcadia Plumbing
1988
$ 2,426
$ 607
$ 121
--
Trust 1989
2,300
--
--
$ 460
Docket No. 5119-93
Additions to Tax and Penalty
Sec.
Sec.
Sec.
Petitioner
Year
Deficiency
6651(a)(1)
6653(a)(1)
6662(a) Richard & Charlotte
1988
$ 4,639
$ 601
$ 542
--
M. Broderick
1989
2,095
345
--
$ 419
*461 The issues for decision are: (1) Whether Arcadia Plumbing Trust (APT) is an association taxable as a corporation pursuant to section 301.7701-2, Proced. & Admin. Regs.; (2) whether APT's gross receipts were $ 21,871 for 1988 and $ 28,522 for 1989; (3) whether APT's expenses were $ 5,697 for 1988 and whether APT's expenses should be reduced by $ 13,261 for 1989; (4) whether APT is liable for the addition to tax pursuant to section 6653(a)(1) for 1988; (5) whether APT is liable for the penalty pursuant to section 6662(a) for 1989; (6) whether APT is liable for the addition to tax pursuant to section 6651(a)(1) for 1988; (7) whether Richard and Charlotte Broderick's (petitioners) 1988 Schedule C net profits should be increased by $ 14,974; (8) whether petitioners' 1989 Schedule C expenses should be reduced by $ 5,612; (9) whether petitioners must recognize rental income of $ 3,473 in 1989 which respondent reallocated to them from APT pursuant to section 482; (10) whether petitioners are liable for additional self-employment taxes in 1988 and 1989; (11) whether petitioners are liable for the addition to tax pursuant to section 6653(a)(1) for 1988; (12) whether petitioners are liable *462 for the penalty pursuant to section 6662(a) for 1989; and (13) whether petitioners are liable for additions to tax pursuant to section 6651(a)(1) for 1988 and 1989. For convenience and clarity, we have combined the findings of fact and opinion regarding respondent's determinations of the tax liabilities of petitioners and APT for the years 1988 and 1989. Some of the facts have been stipulated, and they are so found. The stipulations of fact, together with attached exhibits, are incorporated herein by this reference. Petitioners resided, and APT was located, in Phoenix, Arizona, when they filed their petitions herein. Petitioners did not file Federal income tax returns for the years 1982 through 1987. Their 1988 and 1989 returns were untimely filed on or about October 30, 1990. Petitioners' 1988 and 1989 returns were assigned to Revenue Agent Herbert J. Vanderslice (the revenue agent) for audit. As a result of his preliminary review of petitioners' 1988 and 1989 returns, the revenue agent became aware of APT's existence, and he extended his examination to APT. APT
Prior to 1987, Richard Broderick (petitioner) was in the plumbing business. He allegedly was concerned about *463 liabilities that he might incur in his business. He testified, for instance, that he feared that if one of his employees were to burn a client's house down, he would be liable for the damages. He considered incorporating his business but, in 1987, he met Cal Newell who convinced him that he should establish a trust that would give him more protection from liability than a corporation. On October 9, 1987, petitioner instigated the creation of APT. The "creator" of the trust was Jessica F. Blair. The trust agreement referred to Cindy Jenkins as the "Exchangor" of the trust. The trust agreement provided that the "Creator" would exchange 100 trust certificates for real and/or personal property of the "Exchangor". It further provided that the 100 trust certificates were assigned by the "Creator" to the "Exchangor" for $ 10. The purpose of the trust was stated to be the sane, common, logical, and economical administration of the assets forming the corpus of the trust, by natural and/or artificial persons acting in a fiduciary capacity. Woven into paragraph 14 of the trust agreement is an authorization of the trustee to engage in the plumbing business. The trust instrument provided *464 that the "Creator" should appoint a First Trustee who, in turn, was authorized to appoint a Second Trustee and they, in turn, would appoint additional trustees. Upon the appointment of the first trustee, the "Creator" had no further duties or obligations under the trust except for "any needed assignment, conveyance and delivery to the Trustees of the concerned assets and property". Schedule A attached to the trust instrument noted that no real property was transferred to the trust on October 9, 1987. Schedule B attached to the trust instrument noted that personal property, in the amount of $ 10, was transferred to the trust on October 9, 1987. On that date the "Creator" of the trust appointed Allen Knutsen and Barbara Knutsen as First Trustee and Second Trustee, respectively. The trust instrument also provides that bankruptcy, insolvency or death of any certificate holder shall not, in any manner, affect the trust or its operation or mode of business. Although the trust was ostensibly established for a period of 25 years, its terms provided that at any time before the expiration of the trust, the trustees could extend the trust for a like or shorter period of time. At the first *465 meeting of APT's Board of Trustees on October 16, 1987, the 100 trust certificates were distributed as follows: 34 units to Joy E. Broderick, 33 units to Glenn T. Broderick, and 33 units to William C. Broderick. [2] Allen Knutsen and Barbara Knutsen resigned as trustees and petitioners were appointed as cotrustees of the trust. It was not until March 1988, that real property was transferred to the trust. The properties transferred consisted of petitioners' rental property at 4308 East Sells Drive, petitioners' plumbing business property at 4108 East Indian School Road, and petitioners' personal residence at 4302 East Rancho Drive. All of these properties were located in Phoenix, Arizona. By warranty deeds dated January 25, 1989, petitioner, as a trustee of APT, transferred each of the above mentioned properties from APT to separate land trusts. In the statutory notice of deficiency dated December 11, 1992, the trust was *466 determined to be taxable as a corporation "pursuant to Treas. Reg. Section 301.7701-2". It was also determined that the trust received $ 21,871 of income in 1988. It was further determined that petitioners' rental property, located at 4308 East Sells Drive and the plumbing business property located at 4108 East Indian School Road, did not belong to the trust. Therefore, in the notice the trust's 1989 income was decreased by $ 6,915. The $ 6,915 was reported on APT's 1989 Federal income tax return as rental income from the East Sells Drive and East Indian School Road properties in the amounts of $ 6,435 and $ 480, respectively. For the year 1988, respondent determined that the trust was entitled to deduct $ 5,697 in business expenses. Respondent further determined that the $ 13,261 deduction claimed by the trust for 1989 was disallowed on the ground that it constituted petitioners' personal expenditures and/or pertained to other properties that did not belong to the trust. Respondent contends that APT is a trust in name only and should be taxed as a corporation. In support of her contention, respondent cites section 301.7701-2(a)(1), Proced. & Admin. Regs. Petitioners and the *467 trust argue to the contrary. The Commissioner's determinations in the statutory notice of deficiency are presumed to be correct, and the taxpayer has the burden of proving otherwise. Rule 142(a); Helvering v. Taylor, 293 U.S. 507 (1935); Welch v. Helvering, 290 U.S. 111 (1933). Section 301.7701-2(a)(1), Proced. & Admin. Regs., provides six major characteristics that distinguish a corporation from another type of organization such as a partnership or trust. Those characteristics are: (1) Associates; (2) an objective to carry on business and divide the gains therefrom; (3) continuity of life; (4) centralization of management; (5) liability for corporate debts limited to corporate property; and (6) free transferability of interests. Respondent notes that centralization of management, continuity of life, free transferability of interests, and limited liability are generally common to trusts and corporations. We agree. We also agree that the determinative factors in differentiating a trust from a corporation are whether (1) there are associates, and (2) there is an objective to carry on a business for profit. Sec. *468 301.7701-2(a)(2), Proced. & Admin. Regs. Most of the characteristics enumerated in section 301.7701-2(a)(2), Proced. & Admin Regs., are present in this case. First, with regard to associates, we stated in Hynes v. Commissioner, 74 T.C. 1266, 1279 (1980): In referring to the plural "associates" and the division of profits, the provision expressly excepts a one-man corporation from such references. By implication, the regulation recognizes that when there is a single owner, there will not be associates or a sharing of the profits among associates. * * *
In Hynes we observed that for his own reasons, the taxpayer elected not to carry on his business in his name. We found that the profits of the business were, realistically, under the control of the taxpayer. Here petitioner and/or Mrs. Broderick were able to distribute the profits and/or property of the trust to themselves at any time. Second, APT was formed as a business trust. The trust instrument itself states that it was established for business purposes, more specifically, to carry on the plumbing business. Third, the trust also has continuity of life. By its own terms, the *469 trust provides that bankruptcy, insolvency, or death of any certificate holder shall not, in any manner, affect the trust or its operation or mode of business. Although the trust was ostensibly established for a period of 25 years, its terms provided that at any time before the expiration of the trust, the trustees could extend the trust for a like or shorter period of time. Fourth, the record also demonstrates that petitioners were the managers of the trust from the time of their appointment as cotrustees on October 16, 1987. The centralized management of the trust clearly rested in their hands. Accordingly, we conclude that APT fits within the guidelines of section 301.7701-2, Proced. & Admin. Regs., and we hold that it is an association taxable as a corporation. Having determined that APT is a business trust and taxable as a corporation, respondent proceeded to determine APT's gross receipts and expenses for 1988 and 1989. APT's 1988 Federal income tax return was filed sometime after November 15, 1993, approximately 2 weeks before the trial of these consolidated cases. Respondent's determination of a $ 2,426 deficiency in APT's Federal income tax for 1988 was based upon *470 the revenue agent's audit. The revenue agent's audit report was predicated on the books and records of petitioners as provided to him by petitioners' bookkeeper, Charles Emfinger. Based upon this information respondent determined that APT had 1988 taxable income of $ 21,871. The income was calculated based upon the following 1988 receipts of the trust: Indian School lot
$ 680.00   Sells rental 5,038.50
Use of Indian School lot
2,750.00
Equipment use
300.00
Management fees
13,102.15
Total  $ 21,870.65
Respondent further determined, based upon petitioners' books and records, as submitted by Mr. Emfinger, that APT was entitled to deduct $ 5,697 of expenses in 1988 computed as follows: [3]
4308 East Sells misc. exps. $ 1,509.81
Depreciation
1,500.00
4108 East Indian School misc. exps.
937.17
Depreciation
800.00
1984 Chevy Van depreciation
950.00
Total  $ 5,696.98
*471 Respondent determined a deficiency in APT's 1989 Federal income tax of $ 2,300. Again, the revenue agent's audit report was predicated on the books and records of petitioners as provided to him by Mr. Emfinger. Respondent determined that APT's taxable income in 1989 was decreased by $ 6,915, because the properties located at 4308 East Sells Drive and 4108 East Indian School Road had been transferred out of the trust to separate land trusts on January 25, 1989. Respondent also determined that $ 13,261 claimed as a deduction by the trust was not allowable because the amount related to petitioners' personal expenditures and other expenses relating to properties which did not belong to the trust. The disallowed deductions were as follows: 4302 E. Rancho Drive (personal expenses) $ 5,829
4308 E. Sells
1,885
4108 E. Indian School Road
1,916
General expenses
3,631
Total  $ 13,261
We have previously held that respondent was correct in determining that APT is taxable as a corporation. APT has failed to sustain its burden of showing that respondent was incorrect in her determination of APT's 1988 and 1989 Federal income tax liabilities as set forth in the statutory notice *472 of deficiency for those years, mailed to APT on December 11, 1992. Therefore, we sustain respondent's determination of APT's 1988 and 1989 Federal income tax liabilities. Richard and Charlotte Broderick
Prior to 1987, petitioner was in the plumbing business as a sole proprietor. In 1987, pursuant to recommendations made by Cal Newell, petitioner instigated the creation of APT. After the establishment of APT on October 9, 1987, petitioner continued to manage the everyday affairs of the plumbing business. In conjunction with the examination of APT, respondent increased petitioners' taxable income for 1988 and 1989 due to adjustments made to Schedules C, and rental income attributed to petitioner under section 482. Respondent determined that petitioners' income should be increased by $ 14,974 for 1988. The revenue agent determined that petitioners' business receipts for 1988 were $ 161,792, which excluded sales taxes that were collected, as opposed to the $ 156,431 reported by petitioners. Thus, respondent increased petitioners' receipts by $ 5,361 for 1988. Respondent disallowed expenses in the amount of $ 9,613, as shown in the statutory notice of deficiency, thereby *473 increasing petitioners' income for 1988 in the total amount of $ 14,974. For 1989, respondent disallowed Schedule C expenses in the amount of $ 5,612, thus increasing petitioners' income by that amount. [4]
All of the adjustments to petitioners' 1988 and 1989 returns were calculated by the revenue agent on the basis of documentation submitted to him by petitioners or their bookkeeper, Mr. Emfinger. Any questions the revenue agent had concerning the audit of petitioners' 1988 and 1989 returns were answered by Mr. Emfinger; the audit was conducted at his business establishment. If Mr. Emfinger did not know the answer to a question, he assumed the role of liaison between the revenue agent and petitioner, in order to obtain the answer. Petitioners have not shown any numerical errors in the revenue agent's adjustments to petitioners' 1988 and 1989 returns. They have failed to carry their burden on this issue. Rule 142(a); Helvering v. Taylor, 293 U.S. 507 (1935). *474 Respondent also determined that petitioners received rental income in 1989 in the amount of $ 3,473, which amount respondent reallocated to them pursuant to section 482. Section 482 provides as follows: SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. * * *
The regulations define "organization" and or "trade or business" as follows: Section 1.482-1. Allocation of income and deductions among taxpayers. (a) Definitions. When used in this section and in § 1.482-2 -- (1) the term "organization" includes any organization of any kind, whether it be a sole *475 proprietorship, a partnership, a trust, an estate, an association, or a corporation (as each is defined or understood in the Internal Revenue Code or the regulations thereunder), irrespective of the place where organized, where operated, or where its trade or business is conducted, and regardless of whether domestic or foreign, whether exempt, whether affiliated, or whether a party to a consolidated return.
Respondent determined that APT should be taxed as a corporation, and we have sustained that determination. Respondent's determination in this regard resulted from the manner in which petitioners controlled the operation of APT after its formation on October 9, 1987. The properties that were to constitute the corpus of the trust; i.e., petitioners' personal residence located at 4302 East Rancho Drive, petitioners' rental property located at 4308 East Sells Drive, and petitioners' plumbing business property located at 4108 East Indian School Road, were not transferred to the trust until March 1988. Petitioner has testified that, after the formation of the trust on October 9, 1987, he maintained control over the day-to-day operations of the plumbing business. The record further *476 shows that by warranty deeds dated January 25, 1989, petitioner Richard Broderick, as a trustee of APT, transferred each of the above-mentioned properties to separate land trusts. Petitioners continued to live in their personal residence, located at 4302 East Rancho Drive, and continued to operate the plumbing business from the business property located at 4108 East Indian School Road. Respondent allocated the income and deductions of these properties to petitioners on the ground that APT did not own the properties. Where the deductions allocated from APT to petitioners clearly constituted personal expenditures, they were disallowed pursuant to section 262. The allocation of income and deductions by the Commissioner under section 482 is appropriate where the entities are under common control and the persons exercising the common control do so in order to evade taxes or to distort income. The statute manifests the assignment of income doctrine. In Philipp Bros. Chemicals, Inc. v. Commissioner, 435 F.2d 53, 57 (2d Cir. 1970), affg. 52 T.C. 240 (1969), the Court of Appeals stated: Section 482 was designed to grant the *477 Commissioner authority to reallocate income among controlled businesses in just such a situation as this. The statute rests on the well-settled policy that income is taxable under section 61 of the 1954 Code to the party who earns it and that it is economic reality rather than legal formality which determines who earns income. Income-splitting devices designed to save taxes cannot be used to undermine the established principal that income is to be taxed to its real owner. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).
Petitioners have submitted no credible evidence to persuade us that APT was established for any reason other than tax avoidance. Consequently we hold that respondent has correctly applied the provisions of section 482 in this case. Because of a concession made by the parties in docket No. 5119-93, a Rule 155 computation of petitioners' tax liabilities for the years in issue will be necessary. The determination of petitioners' self-employment taxes for 1988 and 1989 will automatically follow the determination of their self-employment income for those years. Additions to *478 Tax and Penalties
1. Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from willful neglect, and (2) the failure was due to reasonable cause. Willful neglect has been interpreted to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). Reasonable cause requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nonetheless unable to file a return on time. 2. Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). 3. Section 6662(a) mandates that a penalty in an amount equal to 20 percent of any portion of an underpayment to which section 6662 applies be added to the tax. Section 6662(b)(1) states that section 6662 applies to any underpayment which is attributable to negligence or *479 disregard of rules or regulations. Section 6662(c) defines negligence as any failure to make a reasonable attempt to comply with the provisions of this title, and defines disregard as any careless, reckless, or intentional disregard. The burden is on the taxpayer to prove that he is not liable for the additions to tax and penalties determined by the Commissioner. Rule 142(a). APT and petitioners merely state that because they are not liable for any deficiencies in tax for the years in issue, they are not liable for the additions to tax and penalties determined by respondent. They have clearly failed to carry their burden of proof. Therefore, respondent's determinations of the additions to tax and penalties are sustained. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
2. The record does not indicate the relationship of these three individuals to petitioners.↩
3. In her Brief in Answer, respondent states that the Commissioner determined that the corporation had $ 28,871 in gross receipts, a deduction of $ 3,250 for depreciation, and $ 5,697 in other deductions * * *. These figures are incorrect and do not comport with the evidence in the record.↩
4. The parties stipulated at trial that the correct amount is $ 5,320.↩